## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |
|---|---|
| **SELENA P. HUTCHINSON,** | ) |
|  | ) |
| **Plaintiff,** | ) |
|  | ) |
| **v.** | ) **Civil Action No. 09-0718 (ESH)** |
|  | ) |
| **ERIC HOLDER,** | ) |
|  | ) |
| **Defendant.** | ) |

_____)

### MEMORANDUM OPINION

Plaintiff Selena Hutchinson has sued defendant, the United States Department of Justice ("DOJ"), for discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2000e-17, and the Civil Rights Act of 1991 ("CRA"), 42 U.S.C. § 1981a. The defendant now moves for partial dismissal of Ms. Hutchinson's claims or, in the alternative, partial summary judgment. For the reasons stated herein, the motion will be granted in part and denied in part.

### BACKGROUND

### I.    FACTUAL HISTORY

Until August 1, 2009, plaintiff Selena Hutchinson was a GS-15 Computer Scientist in the Office of the Chief Technology Officer ("OCTO") Foreign Terrorist Tracking Task Force ("FTTTF"), Information Technology Support Unit ("ITSU") of the Federal Bureau of Investigation ("FBI").[1]  (Compl. ¶ 5.)  She had been employed by the FBI since March 25, 1990,

---

[1] On August 1, 2009, Ms. Hutchinson left the FBI to join the Department of Homeland Security. (Pl.'s Opp'n to Def.'s Mot. to Dismiss in Part Or, Alternatively, for Summ. J. In Part ["Pl.'s Opp'n"] at 1-2.)

when she began working as a GS-13 Computer Equipment Analyst.  (*Id.* ¶ 14.)  She was

promoted to GS-14 in 1991 and to GS-15 in 1995.  (*Id.* ¶ 15.)  Ms. Hutchinson alleges that she

achieved the rank of GS-15 Unit Chief with supervisory responsibilities.[2]  (*Id.*; Pl.'s Opp'n at 2.)

Until his retirement in December 2005, Ms. Hutchinson's first line supervisor was Section Chief

Mark Tanner, Director of the FTTTF.  (Compl. ¶ 18.)  At that time, Jerome Israel, Chief

Technology Officer ("CTO"), OCTO, Office of the Chief Information Officer ("OCIO"), became

Ms. Hutchinson's first line supervisor.  (*Id.*)

On September 5, 2005, Mr. Israel hired Timothy Goodwin as a GS-15 Supervisory IT

Specialist at the FBI.  (*Id.* ¶ 19.)  Mr. Goodwin was then promoted to Acting Section Chief, a

position that plaintiff alleges was not offered to her or posted for competition, despite her

previous experiences as Acting Section Chief under Mr. Tanner.  (*Id.*)  Mr. Goodwin became

Ms. Hutchinson's first line supervisor.  (*Id.* ¶ 21.)  Ms. Hutchinson claims that around this time,

Mr. Israel began to question Ms. Hutchinson's status as Unit Chief, and on January 9, 2006, Mr.

Israel informed plaintiff that she was not, in fact, a Unit Chief.  (*Id.* ¶ 20.) On January 11, 2006,

Mr. Goodwin gave Ms. Hutchinson a new Performance Plan, indicating that she no longer had

supervisory responsibilities and informed two of Ms. Hutchinson's subordinate managers that

Ms. Hutchinson was no longer their supervisor and that they were to report to Mr. Goodwin.  (*Id.*

¶¶ 22-23.)  That same day, Ms. Hutchinson initiated informal contact with the FBI's Equal

Employment Opportunity ("EEO") office.  (*Id.* ¶ 25.)

---

[2] Defendant maintains that Ms. Hutchinson "never formally" held the position of Unit Chief or
Acting Unit Chief within the FTTTF.  (Def.'s Statement of Undisputed Facts ¶¶ 6-7.)  For
purposes of deciding defendant's motion to dismiss, the Court presumes plaintiff's factual
allegations to be true.  *See*, *e.g.*, *Maljack Prods., Inc. v. Motion Picture Ass'n of Am., Inc.*, 52
F.3d 373, 375 (D.C. Cir. 1995).

Ms. Hutchinson claims that starting in late 2005, the FBI, primarily through the actions of Mr. Israel, Mr. Goodwin, and Richard Chandler, who was hired to replace Mr. Goodwin when he left the FBI in July 2007, discriminated against her based on her race and sex, subjected her to a hostile working environment, and retaliated against her for contacting the EEO office. (*Id.* ¶¶ 88, 91, 94-97, 100.) Specifically, Ms. Hutchinson alleges that the defendant repeatedly selected white and/or male individuals who had not engaged in protected activity for promotional positions without competition (*id.* ¶¶ 19, 36, 46-47, 61-62, 70, 73, 75); effectively demoted plaintiff, replaced her with white males, removed her responsibilities, and prevented her from working on projects to which she had previously contributed (*id.* ¶¶ 22-23, 40-43, 67-68, 71, 80); undermined plaintiff's authority and assigned her menial duties (*id.* ¶¶ 23, 42-43, 80); failed to select her for a Section Chief position for which she was one of the best qualified candidates (*id.* ¶ 36); and gave her undeservedly low performance ratings. (*Id.* ¶¶ 28, 44, 81, 83, 85). Ms. Hutchinson also contends that the FBI discriminated and retaliated against her by denying her awards and recognition she had earned (*id.* ¶¶ 34); forcing her to switch offices (*id.* ¶¶ 24, 76, 78-79); firing contractors assigned to her projects (*id.* ¶ 37); excluding her from various meetings (*id.* ¶ 42, 82); and harassing and humiliating her via email and, on one occasion, in person. (*Id.* ¶¶ 30, 33, 45, 55, 66-67).

In 2007, Ms. Hutchinson was investigated by the Office of Professional Responsibility ("OPR") after she was accused of authoring three letters of recommendation on FBI letterhead using the title "Unit Chief" or "Acting Section Chief" when she was not entitled to use either designation. (*Id.* 48-54, 63-64.) Ms. Hutchinson maintains that the initiation of the OPR investigation, purported false accusations about plaintiff during the investigation, and the unauthorized search of her computer to obtain copies of the letters at issue also constitute

discrimination and retaliation.  (*Id.* ¶¶ 88, 91, 101.)  Plaintiff alleges that the discrimination and

retaliation continued between July 2007, when Mr. Chandler became her first line supervisor,

and her departure from the FBI in August 2009.  (*Id.* ¶¶ 72-82.)  In particular, Ms. Hutchinson

states that despite her seniority, Mr. Chandler refused to assign her responsibility, failed to invite

her to staff meetings, did not provide her with a Blackberry, infrequently engaged her directly

and instead communicated with her through his other subordinates, and did not ask Ms.

Hutchinson to act in his absence.  (*Id.* ¶ 82.)  She also alleges that Mr. Chandler provided her

with unjustifiably poor performance ratings and failed to acknowledge her successes, including

her 30 Year Government Service Certificate.  (*Id.* ¶¶ 84-86.)  In sum, the complaint lists dozens

of acts that plaintiff claims constituted a hostile work environment,[3] as well as alleged discrete

acts of discrimination[4] and retaliation.[5]

---

[3] Ms. Hutchinson does not attempt to segregate those events she claims constitute a hostile work environment from discrete acts of discrimination and/or retaliation.  Count III of the complaint incorporates all of the acts described in the complaint and alleges that they constitute a "persistent pattern of severe or pervasive harassment" which "created a hostile environment for Plaintiff in the workplace."  (Compl. ¶ 94.)

[4] The complaint lists numerous acts of alleged discrimination and retaliation.  Counts I and II (sex and race discrimination) summarize these acts as "repeatedly selecting white males who had not engaged in protected activity in positions over Plaintiff without competition, effectively demoting Plaintiff, removing Plaintiff's supervisory duties, removing Plaintiff from her office and replacing her with a white male, informing her subordinates that she was no longer their supervisor, denying Plaintiff opportunities to compete for promotional positions, not selecting or recommending Plaintiff for promotional positions, denying her awards and recognition, removing Plaintiff's Project Manager responsibilities, giving Plaintiff poor ratings, assigning her menial work, harassing Plaintiff about sick leave, and initiating an OPR investigation."  (Compl. ¶¶ 88, 91.)

[5] Count IV summarizes the defendant's alleged retaliatory acts as "repeatedly selecting whites and/or males who had not engaged in protected activity for positions over Plaintiff without competition, denying Plaintiff opportunities to compete for promotional positions, not selecting or recommending Plaintiff for promotion, denying Plaintiff awards, removing Plaintiff's Project Manager responsibilities, giving Plaintiff poor ratings, and initiating an OPR investigation."  (Compl. ¶ 100.)

## II.   PROCEDURAL HISTORY

Ms. Hutchinson's initial contact with the EEO office occurred on January 11, 2006. (Compl. ¶¶ 7, 25.)  She received a Notice of Right to File a Discrimination Complaint on February 27, 2007, and she filed a formal complaint of discrimination against defendant on March 3, 2007.  (*Id.* ¶¶ 8-9.)  After allowing plaintiff to amend her EEO complaint several times, the EEO office accepted the following issues for investigation:

> Whether complainant was subjected to harassment (hostile work environment) based on race (Black), sex (female) and reprisal for her prior participation in EEO protected activity, including, but not limited to the following:
>
> (1) in January 2006, she was denied the opportunity to compete for the Acting Section Chief position while management appointed a white male without competition;
>
> (2) on January 9, 2006, she was stripped of her duties as a Unit Chief and replaced by a less-qualified white male;
>
> (3) on January 11, 2006, she was presented a Performance Plan without supervisory responsibilities and removed from her office;
>
> (4) in September 2006, she received a demeaning e-mail accusing her of mismanaging a project;
>
> (5) in February 2007, her development contractors were "let go;" she believes to ensure her failure;
>
> (6) on March 29, 2007, she was advised that she was being removed as the Project Manager on two projects, and on April 2, 2007, she was assigned duties with less responsibility and skill;
>
> (7) on April 2, 2007, she received a performance rating of Successful, and advised that she needed improvement in 2-4 areas; she believes that her supervisor made false accusations about her performance, including accusing her of having communication problems and sharing detailed project information with executives;
>
> (8) on April 4, 2007, she received an e-mail from her supervisor complaining that she had not communicated her need for sick leave directly to him;

(9) on April 23, 2007, she became aware that she was the subject of an Office of Professional Responsibility investigation;

(10) on July 5, 2007, she became aware that she was denied the opportunity to compete for the Unit Chief position while management appointed a white male without competition;

(11) on April 9, 2007, she was denied the opportunity to compete for the Unit Chief position of a Support Unit while management appointed a white male to the position, without competition; and

(12) [w]hether complainant was subjected to harassment (hostile work environment) based on race (Black), sex (female) and reprisal for her prior participation in EEO protected activity when on November 7, 2007, she received a Minimally Successful rating on her Performance Appraisal Report.

(Decl. of Steven J. Parker ["Parker Decl."], Ex. A, at 1, 3-5.)  On April 21, 2008, Ms.

Hutchinson requested a hearing before an Administrative Judge ("ALJ") of the U.S. Equal

Employment Opportunity Commission ("EEOC").  (Compl. ¶ 10.)  Plaintiff received a copy of

the Report of Investigation ("ROI") generated by the EEO office on June 3, 2008.  (*Id.* ¶ 11.)

Ms. Hutchinson then moved to amend her claims before the Administrative Judge on July 1,

2008.  (Pl.'s Opp'n at 14; Parker Decl. ¶ 3.)  On July 7, 2008, ALJ Richard Furcolo granted Ms.

Hutchinson's motion to add the following claim to her EEOC charge: "[w]hether Complainant

was discriminated against and subjected to harassment (hostile work environment) based on race,

sex, and in reprisal for her prior participation in EEO protected activity when she was not

selected for the position of Section Chief, IT Manager (Systems Development Section), vacancy

no. 20-2007-0012."  (Parker Decl., Ex. B.)  In February 2009, plaintiff withdrew her request for

a hearing and asked that the case be remanded to the FBI for a Final Agency Decision, which

request was granted on March 2, 2009.  (Compl. ¶ 12.)  Ms. Hutchinson filed the instant

complaint on April 20, 2009.

The defendant has moved to dismiss portions of Ms. Hutchinson's complaint.[6] Specifically, the FBI seeks dismissal of various discrete claims of disparate treatment based on a failure to exhaust, claims of discrimination and/or retaliation based on conduct that defendant maintains does not amount to an adverse employment action, and plaintiff's hostile work environment claim.  (Def.'s Reply Mem. in Support of Def.'s Mot. to Dismiss In Part or, Alternatively, For Summ. J. in Part ["Def.'s Reply"] at 1.)  The FBI argues that plaintiff failed to exhaust administrative remedies with respect to her claim of non-selection for the Senior Executive Service ("SES") position of Section Chief, IT Manager (Systems Development Section), which was added to her EEO case by ALJ Furcolo.[7]  (Def.'s Mot. at 12.)  Defendant further contends that certain of the incidents alleged by Ms. Hutchinson as discrimination are not independently actionable as claims of disparate treatment or retaliation under Title VII. (*Id.* at 24-27.)  Specifically, the FBI argues that allegations regarding Ms. Hutchinson's low performance appraisals, removal of Ms. Hutchinson's supervisory duties and Project Manager responsibilities, assignment of menial work, harassment of plaintiff regarding her sick leave, initiation of an OPR investigation, denial of awards and recognition, and messages to subordinates that plaintiff was no longer their supervisor do not independently support claims of discrimination or retaliation.  (*Id.* at 25.)  Defendant also maintains that plaintiff's complaint does not, as a matter of law, set forth a hostile work environment claim.  (*Id.* at 17.)

---

[6] In the alternative, the defendant seeks partial summary judgment.

[7] The defendant also challenges three additional instances of plaintiff's non-selection for promotional positions identified in the complaint.  (Compl. ¶¶ 39, 57, 77; Def.'s Mot. at 12.) Ms. Hutchinson concedes, however, that these claims were not included in her EEO case and are therefore not "separate actionable claims."  (Pl.'s Opp'n at 16.)  The Court therefore need only consider the claim added to Ms. Hutchinson's EEO case by ALJ Furcolo.

## ANALYSIS

### I.  LEGAL STANDARDS

#### A.  Rule 12(b)(6)

Despite some confusion in this jurisdiction regarding "whether a failure to exhaust administrative remedies is properly brought in a Rule 12(b)(1) motion, as a jurisdictional defect, or in a Rule 12(b)(6) motion for failure to state a claim," recent cases "favor treating failure to exhaust as a failure to state a claim."  *Hansen v. Billington*, No. 08-1133, 2009 WL 2392895, at * 4 (D.D.C. Aug. 5, 2009) (listing cases); *see also Kilby-Robb v. Spellings*, 309 Fed. Appx. 422, 423 n.1 (D.C. Cir. 2009) ("[T] he mandatory exhaustion requirement is not jurisdictional.").  In deciding a Rule 12(b)(6) motion, a court may consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Hansen*, 2009 WL 2392895, at *4 (quoting *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002)).

As the Supreme Court recently held in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), "[t]o survive a motion to dismiss [under Rule 12(b)(6) of the Federal Rules of Civil Procedure], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 1949 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must be dismissed under Rule 12(b)(6) if it consists only of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Iqbal,* 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted)).  The allegations in plaintiff's complaint are presumed true at this stage and all reasonable factual inferences must

be construed in the plaintiff's favor.  *Maljack*, 52 F.3d at 375.  "However, 'the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint.'" *Hughes v. Abell*, 634 F. Supp. 2d 110, 113 (D.D.C. 2009) (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

### B.  Rule 56

Under Federal Rule of Civil Procedure 56, a motion for summary judgment shall be "rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "[A]n added measure of 'rigor,' or 'cautio[n],' is appropriate in applying this standard to motions for summary judgment in employment discrimination cases.  Courts reviewing such motions must bear in mind that a factfinder could infer intentional discrimination even in the absence of crystal-clear documentary evidence filed at the summary judgment stage." *Aka v. Wash. Hosp. Ctr.*, 116 F.3d 876, 879-80 (D.C. Cir. 1997) (en banc) (citations omitted).

### C.  Title VII and Section 1981

Under Title VII of the Civil Rights Act of 1964, it is an "unlawful employment practice" for employers "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(a)(1), or "to limit, segregate, or classify his employees ... in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee," 42 U.S.C. § 2000e-2(a)(2), based on a protected characteristic.  *Forkkio v. Powell*, 306 F.3d 1127, 1130 (D.C. Cir. 2002).  It is also unlawful to retaliate against an employee because she "has opposed any practice

made an unlawful employment practice" by Title VII or because she "has made a charge,

testified, assisted, or participated in any manner in an investigation, proceeding, or hearing"

under Title VII.  *Id.* § 2000e-3(a).  As amended by the Civil Rights Act of 1991, Section 1981

"prohibits racial discrimination in the 'making, performance, modification, and termination of

contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual

relationship.'"  *Pollard v. Quest Diagnostics*, 610 F. Supp. 2d 1, 17-18 (D.D.C. 2009) (quoting

42 U.S.C. § 1981(b)).  Like Title VII, Section 1981 also encompasses claims of retaliation.

*CBOCS West, Inc. v. Humphries*, 128 S.Ct. 1951, 1961 (2008).

To bring a successful claim under Title VII or Section 1981, a plaintiff "must

demonstrate by a preponderance of the evidence that the actions taken by her employer were

'more likely than not based on the consideration of impermissible factors' such as race, ethnicity,

or national origin."  *Pollard*, 610 F. Supp. 2d at 18 (quoting *Tex. Dep't of Cmty. Affairs v.

Burdine*, 450 U.S. 248, 254 (1981)).  A plaintiff may prove her claim with direct evidence or,

absent direct evidence, she may "indirectly prove discrimination by establishing a prima facie

case under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green,

411 U.S. 792 (1973)."  *Brady v. Livingood,* 456 F. Supp. 2d 1, 6 (D.D.C. 2006); *see also Jenkins

v. Nee*, 640 F. Supp. 2d 47, 49 (D.D.C. 2009) (applying *McDonnell Douglas* framework to §

1981 case).  "[A] plaintiff-employee carries the initial burden of production and must establish a

*prima facie* case of discrimination."  *Id.*  "To state a prima facie case of disparate treatment

discrimination under [Title VII or Section 1981, a] plaintiff must establish that (1) [s]he is a

member of a protected class, (2) [s]he suffered an adverse employment action, and (3) the

unfavorable action gives rise to an inference of discrimination (that is, an inference that his

employer took the action because of h[er] membership in the protected class)."  *Forkkio*, 306

F.3d at 1130.  To survive a motion to dismiss, a plaintiff filing an employment discrimination

complaint need not establish a *prima facie* case of discrimination.  *Ware v. Nicklin Assocs., Inc.*,

580 F. Supp. 2d 158, 164 (D.D.C. 2008); *see also Swierkiewicz v. Sorema*, 534 U.S. 506, 511

(2002).  Courts can, however, explore a plaintiff's *prima facie* case at the dismissal stage to

determine "whether the plaintiff can ever meet [her] initial burden to establish a *prima facie*

case." *Rochon v. Ashcroft*, 319 F. Supp. 2d 23, 29 (D.D.C. 2005), *rev'd on other grounds sub*

*nom. Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006); *see also Ervin v. Howard*

*Univ.*, 562 F. Supp. 2d 58, 70 (D.D.C. 2008) ("A plaintiff is not required to plead a *prima facie*

case of hostile work environment in the complaint; however, the alleged facts must support such

a claim.").

## II.  EXHAUSTION OF TITLE VII CLAIMS

The FBI argues that Ms. Hutchinson failed to exhaust administrative remedies with

respect to her non-selection for the SES position of Section Chief, IT Manager position in the

Systems Development Section (vacancy announcement no. 20-2007-0012).  "[A] timely

administrative charge is a prerequisite to initiation of a Title VII action in the District Court."

*Jarrell v. U.S. Postal Serv.*, 753 F.2d 1088, 1091 (D.C. Cir. 1985).  An employee of the federal

government complaining of discrimination must "initiate contact" with an EEO counsel within

45 days of the allegedly discriminatory action or, in the case of a personnel action, within 45

days of the effective date of the action.  29 C.F.R. § 1614.105(a)(1).  If the matter is not resolved

informally, the complainant may file a formal complaint against the agency, which the agency

must investigate within 180 days of filing.  29 C.F.R. §§ 1614.105(d), 106(e)(2), 108(e).  A

complainant must file her formal charge within 180 or 300 days after the alleged unlawful

employment practice occurred.  42 U.S.C. § 2000e-5(e)(1).  "Each discrete discriminatory act

starts a new clock for filing charges alleging that act" and "[t]he charge, therefore, must be filed within the 180- or 300-day time period after the discrete discriminatory act occurred." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Once the agency investigation concludes, the employee has the right to 1) request a hearing and decision from an administrative judge, or 2) request an immediate final decision from the agency. 29 C.F.R. § 1614.108(f). The employee may appeal a decision of the administrative judge or the agency to the EEOC or file a civil action in federal district court. 42 U.S.C. § 2000e-16(c); 29 C.F.R. §§ 1614.401, 1614.407.

In filing a civil action in district court following an EEO complaint, an employee may only file claims that are "like or reasonably related to the allegations of the [EEO] charge and grow[] out of such allegations." *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (quoting *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994)). "At a minimum, the Title VII claims must arise from 'the administrative investigation that can reasonably be expected to follow the charge of discrimination.'" *Id.* (quoting *Chisholm v. U.S. Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981)). The Title VII exhaustion requirement also means that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Morgan*, 536 U.S. at 113.

Defendant argues that plaintiff failed to exhaust her claim of non-selection for the Section Chief, IT Manager position in the Systems Development Section because although Ms. Hutchinson was permitted to amend her administrative EEO complaint and add the non-selection claim, ALJ Furcolo erred in allowing her to do so. (Def.'s Mot. at 13.) Specifically, defendant argues that the non-selection claim was untimely because plaintiff alleges that she was notified of her non-selection in February 2008 but did not contact an EEO counselor within 45 days of receiving this information as required by EEO regulations. (*Id.*) Further, plaintiff did not move

to amend her complaint until July 2008, nearly a year after the selection decision and five months after plaintiff was on notice of the decision. (*Id.* at 13-14.)  To the extent that the EEOC regulations allow amendments to complaints at any time prior to the conclusion of an investigation, provided that any added claims are "like or related to those raised in the complaint," 29 C.F.R. 1614.106(d), the FBI contends that Ms. Hutchinson's non-selection could not reasonably have been expected to grow out of the original, unamended complaint.  (Def.'s Mot. at 14.)  Moreover, defendant argues that plaintiff's motion to amend the complaint came after the conclusion of the investigation.  (*Id.*)  Accordingly, defendant asks the Court to disregard ALJ Furcolo's order and find that plaintiff's claim has not been properly exhausted. (*Id.* at 13.)

The Court declines to dismiss plaintiff's non-selection claim for failure to exhaust her administrative remedies.  A complainant who has filed an EEO complaint "is authorized under title VII . . . to file a civil action in an appropriate United State District Court" 180 days after filing the EEO complaint if there has been no appeal and no final action taken.  29 C.F.R. § 1614.407; *see also* 42 U.S.C. § 2000e-16(c).  A Title VII lawsuit is "limited in scope to claims that are like or reasonably related to the allegations of the [EEO complaint]."  *Park*, 71 F.3d at 907 (internal quotations omitted).  Here, Ms. Hutchinson's amended EEOC complaint included the exact claim defendant now contends was not exhausted at the administrative level: plaintiff's non-selection for the Section Chief position.  (Parker Decl., Ex. B.)  The instant action was filed over 180 days after the original charge was filed—indeed, it was filed over 180 days after all amendments to the charge were made.  (*Id.*; Compl. ¶¶ 9.)  Defendant cites no law to support its contention that this Court may overturn the decision of ALJ Furcolo to amend Ms. Hutchinson's

complaint to add her non-selection.  The claim was included in the EEOC charge, and as such, it is properly before this Court.

But even assuming *arguendo* that the Court could set aside the ALJ's ruling and review the amendment of plaintiff's complaint anew, there are genuine issues of fact regarding the timeliness of Ms. Hutchinson's non-selection claim.[8]  Section 1614.105(a)(2) states that the "agency or Commission shall extend the 45-day time limit" for contacting an EEO counselor when the complainant "shows that . . . she did not know and reasonably should not have [] known that the discriminatory matter or personnel action occurred."[9]  29 C.F.R. § 1614.105(a)(2).  In determining whether the time limit should be tolled under this regulation, the Court applies the "reasonable suspicion" standard, which "starts the time limit [for initiating contact with the EEO office] when the plaintiff has a reasonable suspicion that [s]he has been the victim of discrimination."  *Aceto v. England*, 328 F. Supp. 2d. 1, 7 (D.D.C. 2004); *see also*

---

[8] Assuming that Ms. Hutchinson's non-selection claim was timely, the Court need not address the issue of whether it was "like or related to" her other claims.  29 C.F.R. § 1614.106(d).  If Ms. Hutchinson's claim were timely, but ALJ Furcolo had rejected her motion to add it to her complaint because it was not "like or related to" her other claims, presumably Ms. Hutchinson could have initiated the process of filing a new claim against the FBI based on her non-selection. However, once the claim was added to the EEOC charge by ALJ Furcolo, Ms. Hutchinson reasonably relied on his decision in not contacting an EEO counselor to start the process of bringing a new claim, as it was already included in her existing case against the agency.  As such, even if this Court were to find that Ms. Hutchinson's non-selection claim is not "like or related to" her other claims, she arguably might have had the ability to raise it as a separate claim under the principle of equitable tolling.  *See Jarrell*, 753 F.2d at 1092 (finding that failure to comply with administrative requirements under Title VII "may be excused if it is the result of justifiable reliance on the advice of another government officer").

[9] Tolling under this regulation is distinct from the common law doctrine of equitable tolling, which can also apply to Title VII claims.  *Harris v. Gonazales*, 488 F.3d 442, 444 (D.C. Cir. 2007) (holding that plaintiff who makes a showing under § 1614.105(a)(2) "need not separately satisfy the common law standard for equitable tolling").  The common law standard for equitable tolling, "which is granted only in 'extraordinary and carefully circumscribed circumstances,'" is "more demanding" than the showing required by § 1614.105(a)(2).  *Id.* (quoting *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 580 (D.C. Cir. 1998)).

*Hyson v. Boorstin*, No. 82-2397, 1982 WL 155452, at *1 (D.D.C. Dec. 23, 1982) (time starts

running when "plaintiff obtains information that gives [her] a 'reasonable suspicion' that [s]he

has been the victim of discrimination").  Ms. Hutchinson contends that she "did not know and

reasonably should not have known" that her non-selection for Section Chief was discriminatory

before she received the ROI in June 2008 because she was unaware of the involvement of Mr.

Israel in the selection process until then.  (Pl.'s Opp'n at 13-14).  Taking this allegation as true

and construing reasonable inferences in her favor, as must be done at this stage, *Maljack*, 52 F.3d

at 375, the Court cannot conclude that Ms. Hutchinson had or should have had a reasonable

suspicion of discrimination prior to her receipt of the ROI.  *See Harris*, 488 F.3d at 445

(reversing summary judgment where reasonable jury could conclude that plaintiff lacked notice

of time limits under § 1614.105(a)(2)).  Accordingly, defendant's motion to dismiss plaintiff's

non-selection claim for failure to exhaust is denied.


## III.   DISCRIMINATION CLAIMS

Defendant argues that certain of Ms. Hutchinson's sex and race discrimination claims

must be dismissed because the acts do not constitute "adverse employment action[s]" under Title

VII or Section 1981.  (Def.'s Mot. at 24-25.)  "An 'adverse employment action' is a 'significant

change in employment status, such as hiring, firing, failing to promote, reassignment with

significantly different responsibilities, or a decision causing significant change in benefits.'"

*Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009) (quoting *Taylor v. Small*, 350 F.3d

1286, 1293 (D.C. Cir. 2003)).  To establish an adverse action in the absence of diminution of pay

or benefits, "[a]n employee must 'experience[ ] materially adverse consequences affecting the

terms, conditions, or privileges of employment or future employment opportunities such that a

reasonable trier of fact could find objectively tangible harm.'" *Id.* (quoting *Forkkio*, 306 F.3d at 1131); *see also Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002).

Defendant challenges Ms. Hutchinson's allegations that the following were adverse actions: the elimination of her supervisory and managerial responsibilities and the assignment of menial work; informing her subordinates that she was no longer their supervisor; her removal from her office; the denial of awards and recognition; the receipt of poor evaluations; harassment regarding her sick leave; and her referral for an OPR investigation.[10]  (Def.'s Mot. 24-25; Compl. ¶¶ 88, 91.)  The Court will address each of these claims *seriatim*.

### A.  Removal of Supervisory Responsibilities and Assignment of Menial Work

"[R]eassignment with significantly different responsibilities . . . generally indicates an adverse action."  *Forkkio*, 306 F.3d at 1131 (citation omitted).  Here, plaintiff maintains that she was removed from her position "as Project Manager of e-Guardian" and was placed "in a significantly diminished capacity on the project." (Compl. ¶ 40.)  She alleges that after her removal, she stopped receiving assignments "commensurate with her grade, skills, and knowledge" and "was not given any bona fide responsibilities or assigned duties." (*Id.* ¶ 42.)  She also was told she could no longer "task or direct" contract staff whom she had supervised previously. (*Id.* ¶¶ 20, 67.)  Plaintiff argues that she was "effectively demot[ed]" as a result of these changes. (*Id.* ¶¶ 88, 91.)  Given that Ms. Hutchinson alleges "significant[]" changes in her responsibilities, including the abrogation of all of her supervisory duties, she has sufficiently claimed adverse employment actions for purposes of surviving a motion to dismiss.  *See Ohal v.*

---

[10] Defendant does not argue that its selection of Mr. Goodwin and Mr. Chandler over plaintiff without competition, its alleged failure to promote Ms. Hutchinson, or its non-selection of plaintiff for the Section Chief, IT Manager position in the Systems Development Section should be dismissed on the grounds that these alleged acts do not constitute adverse employment actions.  (Def.'s Mot. at 7, 24-25.)

*Bd. of Trustees of Univ. of Dist. of Columbia*, 100 Fed.Appx. 833, 834 (D.C. Cir. 2004) ("[A] material reduction of supervisory responsibilities, no less than a total deprivation of such responsibilities, can amount to an adverse employment action.").

### B.  Informing Subordinates of Plaintiff's Changed Position

While plaintiff need not allege a "readily quantifiable loss" in order to claim she suffered an adverse employment action, "not everything that makes an employee unhappy is an actionable adverse action." *Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001).  Here, plaintiff alleges that defendant informed her former subordinates that plaintiff was not the Unit Chief and that they were no longer to report to her.  (Compl. ¶¶ 23.)  While this incident may have been embarrassing or otherwise unpleasant to Ms. Hutchinson, she makes no allegation that the defendant's act of telling plaintiff's co-workers that she had been effectively demoted "significantly change[d] [her] employment status," *Taylor*, 350 F.3d at 1293, or materially altered the "terms, conditions, or privileges" of her job.  *Forkkio*, 306 F.3d at 1131.  "Events that merely have an *effect* on plaintiff's work environment are legally insufficient." *Brantley v. Kempthorne*, No. 06-1137, 2008 WL 2073913, at *5 (D.D.C. May 13, 2008), *aff'd*, No. 08-5210, slip. op. (D.C. Cir. Dec. 23, 2008).  Similarly, "[p]urely subjective injuries, such as . . . public humiliation or loss of reputation are not adverse actions." *Fokkio*, 306 F.3d at 1130-31 (citations omitted).  As such, Ms. Hutchinson has failed to allege an adverse employment action with respect to this claim, and defendant's motion to dismiss it is granted.

### C.  Removal of Plaintiff From Offices

Ms. Hutchinson alleges that when Mr. Goodwin was appointed Acting Section Chief in January 2006 and became her supervisor, she was told to "vacate her office" for him.  (Compl. ¶ 24.)  She also alleges that in October 15, 2007, she was again asked to move to a different office,

one she describes as a "cubicle with a door." (Compl. ¶ 79.) Yet, plaintiff makes no allegations

that either of these moves "affect[ed] the terms, conditions, or privileges of employment . . . such

that a reasonable trier of fact could find objectively *tangible harm*." *Fokkio*, 306 F. 3d at 1131

(emphasis added); *see also Weber v. Hurtgen*, 297 F. Supp. 2d 58, 68 (D.D.C. 2003) (relocation

to less desirable office did not "rise[] to a level of tangible harm"), *rev'd on other grounds sub*

*nom. Weber v. Battista*, 494 F.3d 179 (D.C. Cir. 2007). She does not allege that she had no

office, *see Collins v. State of Illinois*, 830 F.2d 692, 703 (7th Cir. 1987), or that her new office

space affected her ability to perform her responsibilities. *See Gill v. Mayor of Dist. of Columbia*,

No. 07-64, 2007 WL 1549100, at * 4 (D.D.C. May 25, 2007). Although Ms. Hutchinson's new

offices may have been less convenient or desirable than her previous offices, "[m]ere

inconveniences will not rise to the level of adverse action." *Childers v. Slater,* 44 F. Supp. 2d 8,

19 (D.D.C. 1999), *vacated in part on other grounds,* 197 F.R.D. 185 (D.D.C. 2000).

Accordingly, Ms. Hutchinson has failed to state a claim for which relief could be granted as to

her loss of certain office space.

### D.  Denial of Awards and Recognition

Plaintiff claims that she was subject to race and sex discrimination because she was

"den[ied] . . . awards and recognition." (Compl. ¶¶ 88, 91.) Specifically, she alleges that in

October 2006, she recommended "an incentive award for the Guardian Project team; however,

neither Plaintiff's team nor Plaintiff received an award." (Compl. ¶ 34.) Ms. Hutchinson also

contends that although she received her "30 Year Government Service Certificate," Mr. Chandler

did not present it to her or recognize her achievement during a Unit meeting as he did for another

employee. (Compl. ¶ 86.) Yet, Ms. Hutchinson did not make either of these claims in her

formal EEOC charge[11] (Parker Decl., Ex. A at 1-5; Ex. B; *see also* Def.'s Mot. at 25 n.9), nor are

such claims "like or reasonably related to" the allegations in that charge. *Park*, 71 F.3d at 907.

Ms. Hutchinson was required to raise these claims administratively prior to bringing them in her

Title VII action. 42 U.S.C. § 2000e-5(f)(1); *see also Morgan*, 536 U.S. at 114 (holding that

"[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a

separate actionable 'unlawful employment practice'" for which an administrative charge must be

filed). Because she did not, defendant's motion to dismiss these claims is granted.

### E.  Poor Performance Ratings

"[T]he effect of a poor evaluation is ordinarily too speculative to be actionable."

*Douglas*, 559 F.3d at 553. Performance evaluations are likely to be "'[i]nterlocutory or mediate

decisions having no immediate effect upon employment,'" and the "result of an evaluation is

often speculative, making it difficult to remedy." *Russell*, 257 F.3d at 818 (quoting *Mungin v.*

*Katten Muchin & Zavis*, 116 F.3d 1549, 1556 (D.C. Cir. 1997)). However, when the evaluation

determines some objectively tangible benefit or consequence, it may constitute an adverse

employment action. *See*, *e.g.*, *Weber*, 494 F.3d at 185-86 (performance evaluation that resulted

in loss of performance award was adverse); *Douglas*, 559 F.3d at 553 ("If [an] evaluation

determines [a] bonus . . . then the employee may show the evaluation caused an objectively

tangible harm."); *see also Taylor*, 350 F.3d at 1293 ("[P]oor performance evaluations are not

necessarily adverse actions and they should not be considered such *if* they did not affect the

employee's grade or salary.") (internal quotations omitted) (emphasis added).

---

[11] Indeed, as Ms. Hutchinson received her 30 Year Government Service Certificate over two
years after she filed her EEO complaint, the complaint could not possibly have included this
allegation. (Compl. ¶¶ 9, 86.)

Here, Ms. Hutchinson states that she received poor or critical performance appraisals in August 2006, April 2007, and November 2007.[12]  (Compl. ¶¶ 28, 44, 81.)  She also claims that she applied, but was not selected, for at least four positions within the FBI between November 2006 and October 2007.  (*Id.* ¶¶ 36, 39, 57, 77.)  She further alleges that she was denied awards and recognition during this time period, including an incentive award in December 2006.  (*Id.* ¶ 34.)  As discussed, in deciding a motion to dismiss, the Court looks to a plaintiff's *prima facie* case to explore whether she *can*, not whether she does, "meet [her] initial burden to establish a *prima facie* case."  *Rochon*, 319 F. Supp. 2d at 29.  If Ms. Hutchinson can show that her poor performance reviews resulted in her non-selection for promotions or her failure to receive awards and recognition, then she will have demonstrated that they were adverse employment actions.  As such, the Court cannot find that she cannot establish a *prima facie* case, and defendant's motion with respect to Ms. Hutchinson's ratings is denied.

### F.  Sick Leave Harassment

Ms. Hutchinson claims that she was discriminated against on the basis of her race and sex when she was "singled out for disparate treatment with respect to requesting sick leave."  (Compl. ¶¶ 88, 91.)  Specifically, plaintiff alleges that while "normal office procedure for calling in sick involve[d] notifying a co-worker of [an] unanticipated absence" (*id.* ¶ 45), she was told by Mr. Goodwin to communicate her need for sick leave directly to him.  (*Id.*; *see also* Parker

---

[12] Ms. Hutchinson also alleges that she received poor performance reviews in November 2008 and March 2009.  (Compl. ¶¶ 83, 85.)  Yet, neither of these acts was contained in plaintiff's amended EEO complaint.  These evaluations, occurring over a year after the last performance appraisal mentioned in the charge and months after the charge was last amended, could not have been "within the scope of the administrative investigation" that reasonably followed Ms. Hutchinson's EEO complaint.  *Park*, 71 F.3d at 907; *see also Morgan*, 536 U.S. at 114.  As these reviews were not raised administratively, plaintiff cannot now assert them as discrete claims of discrimination.

Decl., Ex. D.)[13]  While Mr. Goodwin's request that Ms. Hutchinson "notify [him] of any leave requests, meetings, ect [sic] - not [her] coworkers" may have been an annoyance to plaintiff, it does not rise to the level of objectively tangible harm.  *See*, *e.g.*, *Williams v. Dodaro*, 576 F. Supp. 2d 72, 88-89 (D.D.C. 2008) (letter reminding plaintiff that she was required to keep supervisor apprised of information did not constitute adverse employment action where letter "did not indicate that it was a reprimand, was not placed in [plaintiff's] personnel file, and it did not lead to any disciplinary action levied against [plaintiff]"); *see also Cochise v. Salazar*, 601 F. Supp. 2d 196, 201 (D.D.C. 2009) (letters of counseling or warning without attendant effects on employment are not "materially adverse").  As such, Mr. Goodwin's email does not constitute an adverse employment action, and defendant's motion to dismiss this claim is granted.

### G.  OPR Investigation

Ms. Hutchinson alleges that in April 2007, she was the "subject of an administrative inquiry investigating whether [she] misrepresented her position" that remained opened until at least June 20, 2007.  (Compl. ¶¶ 50-64.)  She also claims that "[w]hen the [OPR] has an open investigation, that information is provided to the SES Career Board and may impact the subject's ability to obtain a promotion."  (*Id.* ¶ 52.)  According to Ms. Hutchinson's complaint, she "had an application pending for a promotion for an SES position at the time this investigation was initiated."  (*Id.*)  A mere allegation that the investigation possibly resulted in Ms. Hutchinson's non-selection for the SES promotion is insufficient to support a *prima facie* case of discrimination at the summary judgment stage.  *See*, *e.g.*, *Calhoun v. Johnson*, No. 95-2397,

---

[13] Because the complaint references the email Mr. Goodwin allegedly sent to Ms. Hutchinson regarding sick leave procedure, the Court may reference that email in deciding defendant's motion to dismiss without converting the motion to one for summary judgment.  *Hansen*, 2009 WL 2392895, at *4 (in deciding motion to dismiss, courts may reference documents "incorporated by reference in the complaint").

1998 WL 164780, at *3 (D.D.C. Mar. 31, 1998) (even in discrimination cases, plaintiff must "support her allegations by affidavits or other competent evidence"), *aff'd*, No. 99-5126, 1999 WL 825425, at *1 (D.C. Cir. Sept. 27, 1999).  Here, however, the Court looks only to whether Ms. Hutchinson "can ever meet [her] initial burden to establish a *prima facie* case."  *Rochon*, 319 F. Supp. at 29.  If Ms. Hutchinson was not selected for the SES position because of the open OPR investigation, the investigation had material consequences on her "future employment opportunities" and would qualify as an adverse employment action.  *Douglas*, 559 F.3d at 552. As such, defendant's motion to dismiss this claim is denied.

## IV.   RETALIATION CLAIMS

Defendant also contends that certain of Ms. Hutchinson's retaliation claims must be dismissed because none of the acts she describes constitutes an actionable "adverse employment action" under Title VII or Section 1981.  (Def.'s Mot. at 24-25.)  "The anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006).  To prove a retaliation claim under Title VII, a plaintiff "generally must establish that he or she suffered (i) a materially adverse action (ii) because he or she had brought or threatened to bring a discrimination claim."  *Baloch v. Kempthorne*, 550 F.3d 1191, 1198 (D.C. Cir. 2008); *see also* 42 U.S.C. § 2000e-3(a).  A "materially adverse" action is one that would have "dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Burlington*, 548 U.S. at 68 (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).  "The issue of whether a particular employment action was 'materially adverse' is fact-intensive and 'depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances.'"  *Howard v.*

*Gutierrez*, 237 F.R.D. 310, 313 (D.D.C. 2006) (quoting *Burlington*, 548 U.S. at 71) (internal quotations omitted).

The FBI challenges Ms. Hutchinson's allegations that she suffered retaliation because: her Project Manager responsibilities were removed; she was denied awards; she was given poor ratings; and she was subjected to an OPR investigation.  (Def.'s Mot. 24-25; *see also* Compl. ¶ 100.)  Because Title VII provides broader protection for retaliation victims than for discrimination claims, *Burlington*, 548 U.S. at 65, the Court need not reexamine these acts to conclude that they may also constitute "materially adverse actions" for purposes of her retaliation claim.  *See, e.g., Baloch*, 550 F.3d at 1198 n.4 ("'Adverse actions' in the retaliation context encompass a broader sweep of actions than those in a pure discrimination claim.")  Accordingly, defendant's motion to dismiss these claims is denied.  However, for the denial of awards and recognition allegations, Ms. Hutchinson's failure to raise these claims at the administrative level means that she cannot bring them now, either as claims of discrimination or retaliation.  *See Morgan*, 536 U.S. at 114.  As such, defendant's motion to dismiss this retaliation claim is granted.

## V.    HOSTILE WORK ENVIRONMENT CLAIM

Finally, the FBI contends that the acts of harassment alleged by Ms. Hutchinson "are not sufficiently extreme" to amount to a hostile work environment as a matter of law and that her claim therefore should be dismissed.  (Def.'s Mot. at 17.)  To make out a *prima facie* case of hostile work environment, "plaintiff must show that the alleged harassment was based on [her] membership in a protected class, and that [her] employer knew or should have known of the harassment and failed to take any remedial action."  *Hunter v. Clinton*, No. 07-1268, 2009 WL 2926775, *6 (D.D.C. Sept. 15, 2009).  She must also "show that [her] employer subjected [her]

to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Baloch*, 550 F.3d at 1201 (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993)) (citations omitted).  "To determine whether a hostile work environment exists, the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance."  *Id.*

Here, Ms. Hutchinson maintains that she was humiliated, falsely accused, and denigrated over a three-year period because of her sex, race, and prior EEO activity such that her ability to perform her job was diminished and the terms of her employment were affected.  (Compl. ¶ 96.) Her complaint lists dozens of incidents that she alleges constituted a hostile working environment.  She further alleges that she gave the FBI actual notice of the harassment but the agency "failed to adequately investigate [her] complaint and took no remedial action."  (*Id.* ¶ 97.) While the burden is on the plaintiff to adduce competent evidence and/or affidavits in support of her claims as the case moves forward, the Court cannot conclude at this juncture that her harassment claim should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court grants defendant's motion to dismiss plaintiff's claims of discrimination and/or retaliation based on representations made to her co-workers, plaintiff's removal from her office, denial of awards and recognition, and alleged harassment regarding her sick leave.  With respect to plaintiff's claims of discrimination and/or retaliation based on the removal of plaintiff's supervisory responsibilities and the assignment of menial work, her poor performance ratings, and the OPR investigation, defendant's motion is denied. Defendant's motion to dismiss plaintiff's non-selection claim for the SES position of Section

Chief, vacancy number 20-2007-0012, and her hostile work environment claim is also denied.

Because the Court found it unnecessary to convert defendant's motion to dismiss into a motion for summary judgment, plaintiff's motion under Rule 56(f) is denied as moot.  A separate Order will accompany this Memorandum Opinion.


_____/s/_____
ELLEN SEGAL HUVELLE
United States District Judge


DATE:  November 12, 2009